WILLIAM B. GREENLAW *et al. v.* ANNA L. GREEN-LAW *et al.*

1. PROPERTY OF MARRIED WOMEN. *Sale for taxes. Power to sell.* If real estate in which a mother, who is a married woman, and her children, who are infants, are jointly interested is about to be sold for taxes which they can not otherwise pay, it would be a good ground for selling the property as manifestly to their interest, either under the statute, or the inherent powers of a court of equity.

2. SAME. *Removal of property to another State. Power of chancery court to sell for.* Courts of chancery in this State may sell the realty of a married woman or an infant for the purpose of removing the proceeds to another State, where the married woman or infant permanently resides, upon the ground that it is manifestly to the interest of the party, if the proof establish the fact; and the transfer may be made through the court of this State and a court of competent jurisdiction of the State of the party's residence.

3. APPEAL OF A PURCHASER. *Error in proceedings. Executed sale. Effect of subsequent proceedings.* The appeal of a purchaser of land, under an executed chancery sale, from a decree refusing his application, whether by motion, petition or original bill, to be relieved from his purchase on the ground of error in the proceedings, is a collateral attack on those proceedings, and if the court had jurisdiction of the parties and the subject-matter the appeal would be of no avail, the title of a purchaser under an executed decree not being affected by any subsequent proceedings resorted to by the parties themselves for the correction of errors.

Greenlaw v. Greenlaw.

4. PARTIES UNDER DISABILITY. *Sale of land of. Compliance with the statute. Acquiescence in irregularities.* It is the duty of parties to comply with the terms of the statute prescribing the mode of proceedings in application for the sale of lands of persons under disability, and it is the duty of the court below to see that these requirements are strictly complied with, but, if the court have jurisdiction of the parties and the subject-matter, a purchaser under a decree in the cause will, by the express terms of the statute, acquire a good title, notwithstanding the failure of the parties and the court below to follow the statute strictly, the parties acquiescing in the proceedings.

### FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

FINLAY & PETERS and POSTON & POSTON for complainants.

METCALF & WALKER and M. R. PATTERSON for defendants.

COOPER, J., delivered the opinion of the court.

The will of J. O. Greenlaw contains the following clause: "I do further give, bequeath and devise to Fannie Greenlaw, wife of my son, William B. Greenlaw, Jr., for the sole and separate use of herself, so long as she may his wife remain and live with him, and the children she may have by her present husband, the said William B. Greenlaw, Jr., one-fourth of my estate (less $10,000), subject to the dower and rights of my wife, and the legacies hereinbefore named, the property herein devised to go to, and belong to the children of my son at the death of the said Fannie, or when she may cease to be his wife

and live with him." In a division of the testator's estate among the devisees, made May 18, 1869, a storehouse and lot on Main street in Memphis was allotted to Fannie Greenlaw and her children, under the above clause of the will. W. B. Greenlaw, Jr., and Fannie, his wife, are now, and have been for several years, residing in the city of Dallas, State of Texas, as their permanent home. They have three children living with them, the eldest of whom is of age and the wife of F. M. Davis, and the other two are minors, one of them having been born on July 1, 1866, and the other on August 31, 1871. This bill was filed, March 25, 1885, by Greenlaw and wife, and Davis and wife, against the two minors to have the lot mentioned above sold, and the proceeds of sale transmitted to the proper court in Dallas, Texas, for reinvestment upon the trusts of J. O. Greenlaw's will. The sale is asked upon the ground that it is manifestly to the interest of the parties, first, because the property is charged with a lien for taxes to the amount of $4,000, which lien is being enforced by suit, and the parties have not otherwise the means of paying off the encumbrances; and, secondly, because it would be beneficial to remove to, and reinvest the estate in the place where the parties have their permanent residence. The bill was sworn to by each of the complainants. Publication was made as to the defendants, for whom a guardian *ad litem* was appointed, who put in a formal answer. The defendants themselves joined also in filing an answer, in which they express the wish that the funds should

be removed to Texas, if the court should deem it
for their interest. It was shown by proof that the
lot was encumbered by a lien for nearly $4,000 of
past due taxes, for the enforcement of which bills
had been filed; that the premises rented for $1,200
a year, from which had to be deducted taxes, insur-
ance, commissions of an agent, and repairs, amounting
to nearly $500. It was further shown that the pro-
ceeds could be reinvested in real estate in Dallas,
Texas, which would yield a larger per cent. on the
investment than the property in question, and would
be likely to enhance in value much more rapidly.
There was also filed the certified copy of a decree
of the district court of Dallas county, Texas, pur-
porting to be rendered in a suit brought by the
complainants in the case now before us against the
same defendants, which recites the facts touching the
title to the lot now in controversy, and the pendency
of the present suit, and then declares that the said
district court is a court of general equity jurisdiction,
having full power to take charge of the proceeds of
the sale of said property, and to cause the same to
be reinvested, subject to the trusts of J. O. Greenlaw's
will; that these trusts would be protected by the laws
of Texas, and that the court would undertake to
receive the fund and administer the trusts accordingly,
and would appoint a receiver to receive the fund,
requiring of him such bond and security as shall, to
the court of Tennessee, seem adequate and just. The
bill before us shows on its face that the estate of
J. O. Greenlaw is still in course of administration,

and that something may yet be realized therefrom under the devise of the will. But there is no proof, except as hereinafter mentioned, showing the pecuniary condition of the complainant Fannie and her children; nor whether they own any, and what other property.

The chancellor, on final hearing, sustained the bill and ordered the land to be sold. It was sold to H. A. Montgomery for $12,300, one-third in cash, and the residue at six and twelve months. The purchaser complied with the terms of sale, but objected to the confirmation of the master's report. His objections are, in brief, first, that the bill is not filed by the regular guardian of the infants; second, that the bill does not state what other property the infants own or are in any way entitled to; third, that our statutes do not contemplate a sale of lands in Tennessee in order that the proceeds may be removed to Texas; fourth, that the failure to pay the taxes was the fault of complainants Greenlaw and wife, and does not justify a sale of the interest of the minors in the land. The chancellor overruled these objections, and confirmed the sale. The purchaser alone appealed.

The devise in J. O. Greenlaw's will above cited, gives any property received under it to Fannie Greenlaw "for the sole and separate use of herself and the children she may have by her present husband," and to go to the children in the contingencies mentioned. The children have an interest in the income during the estate of their mother, as well as the ultimate remainder of the *corpus: Pilcher* v. *McHenry,* 14 Lea, 77. The bill is filed for a sale of the entire

estate, because manifestly to the interest of the parties, by reason of the tax incumbrance, and the permanent removal of the parties to another State. The proof shows the existence of the incumbrance, that it is being enforced by suit, and that the parties are without the means to remove it. The eleventh interrogatory propounded to W. B. Greenlaw, Jr., as a witness, is: "State if you or any of the other complainants or defendants have the means, or can relieve or pay off any liens or encumbrances on the property involved herein, or can you raise or negotiate for funds to do so?" His answer is: "It is impossible for any of the parties to pay off or liquidate any of the encumbrances on said property, nor can they raise any money." Let the fault be where it may, if the property, in which the mother and children are jointly interested, is about to be sold for taxes which they can not otherwise pay, it would undoubtedly be a good ground for selling the property under the statute, or under the inherent jurisdiction of the court, as manifestly to their interest. The chancery court may also sell the realty of a married woman or an infant for the purpose of removing the proceeds to another State where the married woman or infant permanently resides, upon the ground that it is manifestly to the party's interest, if the proof establish the fact: *Hickman* v. *Dudley*, 2 Lea, 375; *McClelland* v. *McClelland*, 7 Bax., 210; *Hart* v. *Czapski*, 11 Lea, 151; *Clanton* v. *Wright*, 2 Tenn. Ch., 342; *Yandell* v. *Elam*, 1 Tenn. Ch., 102; *Bright* v. *Bright*, 3 Bax., 109. The two last of these cases hold that the transfer may

be made through the courts of this State and a court
of competent jurisdiction of the State of the parties'
residence.   It is clear, therefore, that there is no
difficulty on the merits of this case, conceding the facts
to be as found by the chancellor, and that the third
and fourth objections of the purchaser, are, ·in that
view, not well taken.   Although we think the facts
do sustain the findings, yet the case is not before
us in a shape to enable us authoritatively to de-
termine the point.   The appeal of the purchaser, being
under an executed chancery sale, only brings up,
under the circumstances of this case, the question of
the validity of the title acquired, the actual fact
being that the parties have acquiesced in the validity
of the proceedings, and the question turns upon the
jurisdiction of the court over the parties and the
subject-matter.   The title of a purchaser under an ex-
ecuted decree can not be affected by any subsequent
proceedings resorted to by the parties for the cor-
rection of supposed errors:   Code, sec. 3186;   *An-
derson* v. *Ammonett,* 9 Lea, 11, and cases there cited.
The objections of a purchaser, after the sale has been
completed, by motion or petition, stand upon the same
footing as if he had proceeded by an original bill.
Whether the one remedy or the other must be resorted
to depends upon the time when the application for
relief is made:   *Foster* v. *Bradford,* 1 Tenn. Ch.,
400;   *Spence* v. *Armour,* 9 Heis., 167.   The rights
of the purchaser are the same in either case, and if
he gets a good title, the validity of the title being
alone in issue, that is all he can ask.   And the

very chapter of the Code on which the appellant relies in this case contains the following section: "If the provisions of this chapter have been substantially complied with, the purchaser of the property will get a good title, although the court may have erred in its conclusions from the facts, and the decree may subsequently be reversed or set aside upon any proceeding for the correction of errors": Code, section 3336.

The present suit is for the sale of the realty of persons under the disability of coverture and infancy. It does not comply with the requirements of the statute: Code, sec. 3324. It should have been filed by the husbands against their wives, and by a general guardian of the infants against them. The bill or answers should have set forth, in accordance with the Code, section 3329, "fully and particularly" the age, circumstances and condition of the parties under disability, what other property, if any, they owned, or were in any way entitled to, and his Honor, the chancellor, should have seen that these requirements were complied with, as prescribed by section 3334. But, in the attitude in which the case comes before us, which is equivalent to a collateral and not a direct attack upon the proceedings, the question is, whether the court had such jurisdiction of the parties and the subject-matter as to render the proceedings valid as against a collateral attack, although it may be erroneous upon a direct appeal. The bill, it will be recollected, is sworn to by all the complainants, and the infants are properly made defendants, are

represented by a guardian *ad litem,* and answer in person, as required by the statute. The court undoubtedly had jurisdiction of the parties and the subject-matter. Under these circumstances, and especially in view of the Code, section 3336, already cited, which seems to have been intended to protect purchasers from the failure of the counsel and the court to follow the provisions of the statute strictly, we think the appellant acquired a good title, which can not be affected by any proceeding taken hereafter by the parties for the correction of errors.

Affirm the decree.